**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ZHE PENG,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-2630-KC** |
| | § | |
| **WARDEN, EL PASO PROCESSING CENTER, et al.,** | § | |
| | § | |
| **Respondents.** | § | |

**ORDER**

On this day, the Court considered Zhe Peng's Amended Petition for a Writ of Habeas Corpus, ECF No. 4. Peng is fifteen weeks pregnant and sits detained in an immigration facility in Texas. *Id.* ¶ 12. She argues that her detention violates an ICE directive generally prohibiting the detention of pregnant women. *Id.* ¶¶ 58–69; *see* U.S. Immigr. & Customs Enf't, Directive 11032.4, *Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals* (2021).[1] For the reasons set forth below, the Amended Petition is **GRANTED** in part.

## I. BACKGROUND

Zhe Peng, a citizen of China, was admitted to the United States in March 2026 on a visitor visa expiring September 8, 2026. Am. Pet. ¶¶ 20–21. Over the summer, she became pregnant by a United States citizen. *Id.* ¶ 23. She is now about fifteen weeks pregnant. *See id.* ¶ 12.

Peng overstayed her visa, and on the morning of September 24 she was detained by immigration officials at a USCIS appointment in California. *Id.* ¶ 25; Resp. 4, ECF No. 6. Later that day, she was taken to a hospital, where she underwent blood and urine tests, which

[1] Directive 11032.4 is available online at https://www.ice.gov/doclib/detention/11032.4_IdentificationMonitoringPregnantPostpartumNursingIndividuals.pdf.

confirmed her pregnancy. Peng Decl. ¶ 7, ECF No. 7-1; Resp. ¶ 4. She was then transferred to an immigration detention center in California, where she stayed for about two weeks. Am. Pet. ¶ 27; Peng Decl. ¶¶ 8–9.

On October 9, Peng was transferred to the El Paso Service Processing Center in Texas. Peng Decl. ¶ 9. The next day, she was examined by medical staff at the detention center and again underwent blood and urine testing, which revealed that she "was lacking vitamins and was dehydrated." *Id.* ¶¶ 12–13; Resp. 11. She "specifically asked for a gynecological examination to check on the fetus," but was told by the medical staff that "no gynecological care was available at the facility" and that they "would try to schedule an examination for" her. Peng Decl. ¶ 14. More than three weeks then passed with no examination, during which Peng developed hemorrhoids and had bloody stool. *Id.* ¶ 16. Peng was finally given an ultrasound at an off-campus medical facility on November 2, only after Peng's attorney contacted ICE and filed this lawsuit. *Id.* ¶ 17; Resp. 11. The ultrasound confirmed that Peng's pregnancy remains viable. Peng Decl. ¶ 18. Peng is scheduled for another appointment in about three weeks. *See* Resp. 11.

Separately, on October 21 Peng was given a statutory bond hearing before an immigration judge under 8 U.S.C. § 1226(a), the provision that governs the detention of noncitizens who have overstayed a visa, among others. Am. Pet. ¶ 35. The immigration judge denied bond, finding Peng to be a flight risk. *Id.*

Peng then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, primarily challenging her detention as unlawful under Directive 11032.4 and the so-called *Accardi* doctrine, named after the Supreme Court's decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). *See generally* Pet., ECF No. 1; Am. Pet. The Directive provides that ICE generally should not detain a noncitizen known to be pregnant, postpartum, or

nursing, and it prescribes various procedures to be followed when ICE does detain such a person. The *Accardi* doctrine, meanwhile, generally requires agencies such as ICE to follow their own regulations and internal procedures. Peng argues that ICE has violated the *Accardi* doctrine by failing to observe the Directive's instructions, thus rendering her detention unlawful. Am. Pet. ¶¶ 58–69.

The Directive was issued in July 2021 and provides: "Generally, ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or exceptional circumstances exist." Directive 11032.4 ¶ 2. It then defines "exceptional circumstances" to exist only when "(1) the individual poses national security concerns; or (2) the individual poses an imminent risk of death, violence, or physical harm to any individual." *Id.* ¶ 3.4. It adds that "ICE officers and agents should carefully weigh the decision to issue a detainer, arrest, or take into custody for an administrative violation of the immigration laws an individual who is known to be pregnant, postpartum, or nursing." *Id.* ¶ 2. The decision to detain a pregnant woman must be made by the relevant Field Office Director or a "designee not below the Assistant Field Office Director (AFOD) level," *id.* ¶ 2.1, and the decision-maker must then weekly "evaluate whether continued detention is appropriate," *id.* ¶ 5.4.

The Directive also outlines some procedures that must be followed "[i]n the very limited circumstances in which" ICE deems detention of a pregnant woman "necessary." *Id.* ¶ 2. For instance, it provides that pregnant women "must" be monitored "for general health and well-being, including regular custody and medical reevaluation, to ensure appropriate pre- and/or post-natal and other medical and mental health care." *Id.* ICE must also "ensure that individuals known to be pregnant . . . are housed in facilities suitable for their medical and mental health

needs." *Id.*; *see also id.* ¶ 5.3. And ICE must avoid using physical restraints on pregnant women except in extraordinary circumstances. *Id.* ¶ 2.3. At the very end, the Directive includes the following disclaimer:

> **No Private Right.** This Directive provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

*Id.* ¶ 9.

In addition to her *Accardi* claim, Peng also argues that the allocation of the burden of proof during her bond hearing was unconstitutional, Am. Pet. ¶¶ 70–77; that her detention is unconstitutionally punitive, *id.* ¶¶ 78–87, and that her detention violates the Administrative Procedure Act, *id.* ¶¶ 88–94.

## II. DISCUSSION

### A. Jurisdiction

As an initial matter, Respondents argue that this Court lacks jurisdiction to grant relief. Resp. 5–6. Respondents point to 8 U.S.C. § 1226(e), which reads:

> (e) Judicial review
> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). But this provision precludes only challenges to *discretionary* judgments, such as an immigration judge's finding that a detainee presents a flight risk. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018). It does not preclude a challenge that a noncitizen's detention is unconstitutional. *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005); *Demore*, 538 U.S. at 516–17.

Peng's Amended Petition charges that her detention is unconstitutional. Her front-line argument is that Respondents violated the *Accardi* doctrine by detaining her in violation of Directive 11032.4. The Fifth Circuit has understood *Accardi* in constitutional terms, holding that an agency's failure to follow its own regulations and procedures to the prejudice of another violates the Fifth Amendment's Due Process Clause. *See Francois v. Garland*, 120 F.4th 459, 464–66 (5th Cir. 2024); *Ayala Chapa v. Bondi*, 132 F.4th 796, 799 & n.3 (5th Cir. 2025). Peng claims that Respondents here did exactly that: ICE failed to follow the procedures specified in the Directive, and as a result Peng sits detained when otherwise she would not. Because Peng's *Accardi* claim thus challenges the constitutionality of her detention, this Court's jurisdiction is not barred by § 1226(e).

**B. *Accardi* Claim**

**1. Exhaustion**

Respondents argue that Peng should have exhausted her claims in the immigration court system before seeking relief in this Court. Resp. 6–7. It is unclear whether Respondents intend for this argument to extend to Peng's *Accardi* claim, or instead just to her claim regarding the allocation of the burden of proof. *See id.* In any event, Peng has already had a bond hearing before an immigration judge, and her *Accardi* claim does not challenge that judge's bond decision. *See id.* Instead, that claim relies on the notion that she should never have been detained at all under the procedures required by the Directive. It is not clear that the immigration judge or Board of Immigration Appeals would even be an appropriate forum to raise such arguments. Certainly, Respondents have not demonstrated, or even stated, that they would be. Nor have Respondents referenced any case law holding that *Accardi* claims based on the Directive are barred by exhaustion principles. *See id.*

### 2. *Accardi*'s Applicability

Respondents next argue that Directive 11032.4 is not the sort of agency work product to which the *Accardi* doctrine applies. Resp. 10–11 & n.4. While this issue has divided the few district courts that have addressed it explicitly, a majority have held that *Accardi* does apply to the Directive.[2]

*Accardi* most clearly applies to so-called legislative rules: agency pronouncements produced typically through the notice-and-comment process that have the force and effect of law. 32 *Wright & Miller's Federal Practice & Procedure* § 8172 (2d ed. 2023); *see, e.g.*, *Nat'l Fam. Planning & Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227, 234 (D.C. Cir. 1992); *Cmty. Action of Laramie Cnty., Inc. v. Bowen*, 866 F.2d 347, 352 (10th Cir. 1989). And the Directive is not a legislative rule; it is probably best characterized as a policy statement. *See* Directive 11032.4 ¶¶ 1, 9. But the *Accardi* doctrine is not strictly limited to legislative rules. *See Newton v. Apfel*, 209 F.3d 448, 459–60 (5th Cir. 2000) (enforcing against the Social Security Agency guidelines contained in an internal agency manual); *see also Morton v. Ruiz*, 415 U.S. 199, 234–35 (1974). An agency's internal guidance is enforceable under *Accardi* when the guidance is "intended to create binding norms" that limit how the agency exercises its discretion. *Wright & Miller's*, *supra*, § 8172 (citation modified); *see* Charles H. Koch, Jr. & Richard Murphy, *Administrative Law and Practice* § 4:22 (3d ed.); *Banegas v. Bondi*, No. 26-cv-63, 2026 WL 473162, at *2

---

[2] *Compare Banegas v. Bondi*, No. 26-cv-63, 2026 WL 473162, at *2 (W.D. Wis. Feb. 19, 2026) (holding that *Accardi* applies to the Directive), *and Morales Lopez v. Maples*, No. 26-cv-113, 2026 WL 1433970, at *5 (S.D. Ind. May 21, 2026) (same), *and Gomez Godinez v. Perez*, No. 26-cv-1420, 2026 WL 2602344, at *4 (S.D. Tex. Aug. 21, 2026) (same), *with Mendoza Santiago v. Hermosillo*, No. 26-cv-132, 2026 WL 3268748, at *4–6 (D. Alaska Oct. 30, 2026) (holding that *Accardi* does not apply to the Directive). Other courts have granted habeas relief on *Accardi* grounds for violations of Directive 11032.4 without expressly analyzing whether it is the type of policy that falls within *Accardi*'s ambit. *See, e.g.*, *De Leon v. Ladwig*, No. 25-cv-1884, 2026 WL 19095, at *6–8 (W.D. La. Jan. 2, 2026); *Shigwedha v. Acuna*, No. 26-cv-2430, 2026 WL 2211525, at *2 (W.D. La. July 31, 2026); *Mirlena J.F. v. Chestnut*, No. 26-cv-5341, 2026 WL 2283104, at *6–7 (E.D. Cal. Aug. 8, 2026).

(W.D. Wis. Feb. 19, 2026) (citing *Zelaya Diaz v. Rosen*, 986 F.3d 687, 692 (7th Cir. 2021)). And internal guidance may also be enforceable "where the rights of individuals are affected." *Newton*, 209 F.3d at 459 (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)).

Under either criterion, Directive 11032.4 falls within *Accardi*'s reach. As to the first, it is true that some parts of the directive use only permissive language. *See, e.g.*, Directive 11032.4 ¶ 2 ("*Generally*, ICE *should* not detain [pregnant women]." (emphasis added)); *see also Mendoza Santiago v. Hermosillo*, No. 26-cv-132, 2026 WL 3268748, at *5 (D. Alaska Oct. 30, 2026). But other parts of the Directive—particularly those governing decision-making and the provision of medical care—use mandatory language, and prescribe detailed procedures. *See, e.g.*, Directive 11032.4 ¶¶ 2, 2.1, 2.3, 5.3, 5.4.

As to the second criterion—the rights of individuals—the Directive is shot through with provisions that protect the individual rights of pregnant and nursing women. Most obviously, the Directive provides that such women generally should not be detained at all except in extraordinary circumstances. *Id.* ¶ 2. The Directive also lays out various procedures that must be followed in the rare event that a pregnant woman is detained. She is entitled, for example, to a weekly evaluation of the continued necessity of her detention by field-office leadership. *Id.* ¶ 5.4. She is entitled to be free from physical restraints except in carefully defined extraordinary circumstances. *Id.* ¶ 2.3. And she is entitled to have her detention facility evaluated for its "ability to meet [her] medical or mental health needs." *Id.* ¶ 5.3. All these procedures work to protect pregnant women from being subjected to unnecessary or unduly restrictive detention.

In light of the above, the Directive's disclaimer that it "provides only internal ICE policy guidance" and is not "enforceable at law," Directive 11032.4 ¶ 9, is not dispositive. *See Ixchop-Perez v. Barr*, 821 F. App'x 690, 695 (9th Cir. 2020) ("Although [an] ICE directive [prohibiting

arrests at sensitive locations] disclaims the provision of any rights or benefits, the *Accardi* doctrine can extend to practices for which the agency disclaims binding effect."). Although a disclaimer is relevant evidence of an agency's intention to bind itself, the more important consideration is "the nature of the guidelines themselves, and the function they govern." *Damus v. Nielsen*, 313 F. Supp. 3d. 317, 337–38 (D.D.C. 2018) (quoting *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1153 (D.C. Cir. 2006)). Because the Directive's substance shows that it is intended at least in part to limit ICE's exercise of discretion and protect pregnant women, it is enforceable under *Accardi* notwithstanding its disclaimer. *See id.*

**3. Application of the Directive**

Having found that the *Accardi* doctrine applies to Directive 11032.4, the Court considers whether Peng has shown that Respondents violated the Directive to her prejudice. Peng alleges that she was detained "without the approval required by" paragraph 2.1 of the Directive, without the weekly assessments required by paragraph 5.4, and "without any exceptional-circumstances determination under" paragraph 3.4. Am. Pet. ¶ 63. She also alleges that Respondents have not assessed the El Paso Service Processing Center's ability to meet her health needs. *See id.* ¶ 64; Directive 11032.4 ¶ 5.4. Respondents, for their part, offer little to refute Peng's allegations. They state simply that "a custody review was conducted for [Peng's] detention," but they give no details about what that review entailed, what its conclusions were, or whether it was performed by the personnel that the Directive specifies. Resp. 11. Respondents also suggest that the Directive is inapplicable to Peng because it "contradict[s] the plain text of [8 U.S.C.] § 1226." Resp. 9. But they do not explain—and the Court does not see—how the Directive could conflict with § 1226(a), which contemplates that the Government may release a noncitizen on conditional parole.

Finally, Peng has shown that she has been prejudiced by Respondents' failure to observe the Directive. *See Shave v. Apfel*, 238 F.3d 592, 596–97 (5th Cir. 2001) (citing *Newton*, 209 F.3d at 459). Neither Peng nor Respondents have offered any reason to think that Peng presents one of the two "exceptional circumstances" contemplated by the Directive, *see* Directive 11032.4 ¶ 3.4, so it is likely that Peng would never have been detained but for Respondents' noncompliance.

Because Peng has shown—and Respondents have not rebutted her showing—that Respondents violated the Directive to her prejudice, she is entitled to relief on her *Accardi* claim.[3]

## III. CONCLUSION

Accordingly, it is **ORDERED** that Peng's Amended Petition, ECF No. 4, is **GRANTED** in part.

**IT IS FURTHER ORDERED** that Respondents, by **no later than November 19, 2026**, must either (1) release Peng from custody; or (2) cure their noncompliance with Directive 11032.4.

**IT IS FURTHER ORDERED** that Respondents, by **no later than November 19, 2026**, must file an advisory informing the Court of their compliance with this Order. If Respondents seek to cure their noncompliance with the Directive and continue detaining Peng, the advisory must clearly specify the steps Respondents have taken to comply with the Directive, including but not limited to:

[3] Because the Court finds that Peng is entitled to relief on her *Accardi* claim, the Court need not address the other claims raised in her Amended Petition. *See* Am. Pet. ¶¶ 70–93.

1. Whether an individual determination, applying the standards set forth in the Directive, was made with respect to Peng's detention, and who made the determination.
2. What exceptional circumstances, as defined in paragraph 3.4 of the Directive, were found to justify Peng's continued detention.
3. Whether Peng's continued detention will be reevaluated on a weekly basis going forward by an appropriately credentialed ICE official.
4. Whether Respondents have evaluated the capacity of the facility in which Peng is detained to meet Peng's medical and mental health needs, and the scope and conclusions of this evaluation.

**IT IS FURTHER ORDERED** that if any deadline set in this Order falls on a weekend or holiday, that deadline is extended to the following business day.

**SO ORDERED**.

**SIGNED this 12th day of November, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE